IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILLIAM EUGENE WILHITE,

      Plaintiff,

    vs.                                                                               Civ. No. 13-1054  MV/KK

**CAROLYN W. COLVIN,**
**Acting Commissoner of Social Security,**

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on Plaintiff's Motion to Reverse or Remand ("Motion"), filed on May 21, 2014.  (Doc. 16.)  The Commissioner of Social Security ("Defendant") filed a Response on July 23, 2014 (Doc. 17), and Mr. Wilhite filed a Reply on August 6, 2014.  (Doc. 18.)  Having meticulously reviewed the entire record and being fully advised in the premises, the Court recommends that the motion to remand be **GRANTED.**

### Standard of Review

Judicial review in a Social Security appeal is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the Commissioner's final decision[2] was supported by substantial evidence; and second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] An Order of Reference (Doc. No. 23) was entered on November 20, 2014, referring this case to Magistrate Judge Kirtan Khalsa to conduct, hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481.  This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Courts must meticulously examine the entire record but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### Applicable Law and Sequential Evaluation Process

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity;" *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *Grogan* 399 F.3d at 1261. If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## Background and Procedural Record

Plaintiff William Eugene Wilhite ("Mr. Wilhite") was born on July 10, 1980. (Tr. 144.) Mr. Wilhite completed his GED in 2000. (Doc. 141.) Mr. Wilhite does not have past relevant work experience.[4] (Tr. 103.) On August 12, 2009, Mr. Wilhite filed an application for

---

[3] 20 C.F.R. pt. 404, subpt. P. app. 1.

[4] Mr. Wilhite has worked off-and-on for only brief periods of time. As such, he does not have work experience as a vocational factor. *See* 20 C.F.R. § 404.1565(a); *see also* SSR 82-62 at *1 ("We consider that your work experience

3

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382(a)(3).  (Tr. 66-72.)  Mr. Wilhite alleged a disability onset date of July 1, 2009, because of "[b]i polar, born with water on brain [sic], schizophrenia, [and] antisocial disorder." (Tr. 135.)  Mr. Wilhite has not engaged in substantial gainful activity since his alleged disability onset date.  (Tr. 21.)

      Mr. Wilhite's application was initially denied on December 2, 2009.  (Tr. 48-51.)  On March 1, 2010, at reconsideration, Mr. Wilhite alleged his mental impairments had worsened because "the voices [he] hears were stronger and louder," and he had to go to Sunrise Mental Health Center in Roswell, New Mexico, for anxiety and depression.  (Tr. 93.)  Mr. Wilhite's application was denied again at the reconsideration level on August 4, 2010.  (Tr. 44-47.)  On August 12, 2011, Mr. Wilhite requested a hearing by an Administrative Law Judge ("ALJ"), and the ALJ conducted a hearing on February 14, 2012. (Tr. 366-395.)  Mr. Wilhite appeared in person with his attorney Justin Raines.  *Id.*  The ALJ took testimony from Mr. Wilhite (Tr. 374-84), Mr. Wilhite's mother, Donna Wilhite (Tr. 384-88), and an impartial vocational expert ("VE"), Judith Beard. (Tr. 388-91.)

      On April 13, 2012, the ALJ issued an unfavorable decision.  At step one, she found that Mr. Wilhite had not engaged in substantial gainful activity since July 29, 2009, the application date.  (Tr. 21.)  Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two and found that Plaintiff suffered from the following severe impairments:  "polysubstance abuse and Bipolar versus a Schizoaffective Disorder."  (Id.)  The ALJ also found that Mr. Wilhite had non-severe impairments of Hepatitis C and insomnia. (Id.)  At step three, the ALJ concluded that Mr. Wilhite did not have an impairment or

---

applies [i.e., is relevant] when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity [SGA].").

combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Id.)

Because none of Mr. Wilhite's impairments met a Listing, the ALJ went on to assess Mr. Wilhite's residual functional capacity ("RFC"). The ALJ determined:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can follow short, simple instructions; make simple decisions with few workplace changes; there must be no work with the public; there can be only occasional, superficial interaction with co-workers; and, he must avoid hazards.

(Tr. 22.) Finally, the ALJ found that considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (Tr. 24-25.)

On March 15, 2013, the Appeals Council issued its decision denying Mr. Wilhite's request for review and upholding the final decision of the ALJ. (Tr. 9-11.) Mr. Wilhite timely filed the instant action for judicial review of the ALJ's decision on October 28, 2013. (Doc. 1.)

## Medical History

The discussion of Mr. Wilhite's medical history that follows captures all pertinent medical information presented to the ALJ and relevant to the issues raised by Mr. Wilhite.

### A. Sunrise Mental Health Center ("Sunrise")

On July 18, 2009, Mr. Wilhite presented to the Eastern New Mexico Medical Center Emergency Department and reported a history of depression and bipolar disorder. (Tr. 305.) Mr. Wilhite stated he had been off his medication for a very long time. (Id.) Dr. Babak Mirin admitted Mr. Wilhite to Sunrise, where he was detoxed from amphetamines and started on medication for his bipolar disorder. (Tr. 303.) Mr. Wilhite's GAF score on July 19, 2009, was

31-40.[5]  (Tr. 326.)  Mr. Wilhite was discharged on July 21, 2009, with diagnoses of bipolar type 1 and methamphetamine dependency.  (Id.)  His discharge medications were Trazodone[6] and Lithium.[7]  He was referred to rehabilitation and substance abuse meetings; however Dr. Mirin noted "I believe he will not follow with them."  (Id.)

On December 4, 2009, Mr. Wilhite was taken by his father to the Eastern New Mexico Medical Center Emergency Department with a history of severe depressive symptoms.  (Tr. 250, 257.)  Mr. Wilhite reported high anxiety and that he had run out of his medications.  (Tr. 250.)  The records note that Mr. Wilhite appeared somewhat sedated and depressed, but denied any hallucinations, delusions, or suicidal or homicidal ideations.  (Tr. 257.)  Mr. Wilhite reported he had had "many admissions [to Sunrise] with the last admission in July 2009."  (Id.)  Mr. Wilhite was admitted to Sunrise with an admission diagnosis of bipolar disorder not otherwise specified and a history of methamphetamine dependence in remission.  (Id.)

Mr. Wilhite's GAF score on December 7, 2009, was 31-40.  (Tr. 263.)

Mr. Wilhite was discharged from Sunrise on December 12, 2009.  (Tr. 247.)  The discharge summary indicates that Mr. Wilhite responded to psychiatric medication and support group activities.  (Id.)  Mr. Wilhite's discharge diagnosis included bipolar disorder not otherwise

---

[5] A GAF score is a subjective rating on a one hundred point scale, divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning. *See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders,* 32, 34 (Text Revision 4th ed. 2000)("DSM–IV–TR"). A GAF score in the range of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). *Id.* at 34.

[6] Trazodone is an antidepressant medicine.  Trazodone is used to treat major depressive disorder. http://www.drugs.com/trazodone.html.

[7] Lithium is used to treat the manic episodes of manic depression. Manic symptoms include hyperactivity, rushed speech, poor judgment, reduced need for sleep, aggression, and anger. It also helps to prevent or lessen the intensity of manic episodes.  http://www.drugs.com/lithium.html.

specified and methamphetamine dependence in remission.  (Id.)  Mr. Wilhite's discharge medications were Lithium, Zyprexa,[8] and Zoloft.[9]  (Id.)  Mr. Wilhite was noted to be clinically stable at discharge and was discharged to a 21-day inpatient rehabilitation program for substance abuse disorder.  (Id.)

On March 19, 2010, Mr. Wilhite was admitted to Sunrise at his own request.  (Tr. 190.)  His appearance was noted as unkempt, and his mood was sad and depressed.  (Id.)  Mr. Wilhite stated that he had relapsed on methamphetamines while continuing to use his prescription medications.  He explained that combining methamphetamines with his prescription drugs increased his visual and auditory hallucinations, and he was seeing people in his home and outside of his home.  (Id.)  Mr. Wilhite reported that when his medications stop working for him and/or when he gets insomnia, his urges for methamphetamines increase.  (Id.)  Mr. Wilhite's admission diagnosis included bipolar not otherwise specified, methamphetamine dependence, alcohol dependence, and possible benzodiazepine abuse/dependence.  (Tr. 197.)

The treatment goals included, *inter alia*, stabilizing Mr. Wilhite's medications, decreasing insomnia, improving coping skills, and detox.  (Id.)  Mr. Wilhite was discharged on March 28, 2010, with a diagnosis of mood disorder not otherwise specified and methamphetamine dependence.  (Tr. 195.)  Mr. Wilhite's GAF score at discharge was 52.[10]

---

[8] Zyprexa (olanzapine) is an antipsychotic medication.  Zyprexa is used to treat the symptoms of psychotic conditions such as schizophrenia and bipolar disorder (manic depression).  http://www.drugs.com/zyprexa.html.

[9] Zoloft (sertraline) is an antidepressant.  Zoloft is used to treat depression, obsessive-compulsive disorder, panic disorder, anxiety disorders, post-traumatic stress disorder (PTSD), and premenstrual dysphoric disorder (PMDD).  http://www.drugs.com/zoloft.html.

[10] A GAF score of 52 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  DSM–IV–TR at 34.

(Tr. 200.) Mr. Wilhite's discharge medications included Remeron[11] and Trazodone. (Tr. 195.) Mr. Wilhite was noted to be cooperative and without suicidal or homicidal ideation, or evidence of psychosis. (Tr. 195.) Mr. Wilhite was instructed to follow up with psychiatry and his primary care provider. (Id.)

### B.    TeamBuilders Counseling Services

On December 3, 2009, Mr. Wilhite was referred to TeamBuilders Counseling Services in Clovis, New Mexico, by his probation officer. (Tr. 206.) Therapist Jose Bose, MSW, LISW, initially assessed Mr. Wilhite. (Id.) Therapist Bose noted the reason for the referral as follows:

> Client experiences mood swings. Client has heightened mood, exaggerated optimism, and decreased need for sleep without experiencing fatigue. He reports impulsiveness, poor judgment, and difficulty in keeping jobs. His manic mood is followed by depressive mood when he has loss of energy, persistent lethargy, worthlessness, and inability to concentrate. He reports hearing voices and seeing shadows. He is also paranoid of people.

(Tr. 206.) Mr. Wilhite reported that he has no difficulty with his activities of daily living, but that he has no friends and prefers to be alone. (Tr. 209.) He also reported having anger management problems and difficulty in adapting to situations. (Id.) Mr. Wilhite's diagnosis was as follows:

    Axis I[12] –     295.70  Schizoaffective Disorders
                     304.80  Polysubstance dependence
    Axis II[13] -    Deferred
    Axis III[14] -   None
    Axis IV[15] -    (psychosocial) Parenting, legal problems
    Axis V[16] -     GAF – 47[17]

---

[11]  Remeron (mirtazapine) is an antidepressant. Remeron is used to treat major depressive disorder. http://www.drugs.com/remeron.html.

[12]  Clinical syndromes.

[13]  Developmental Disorders and Personality Disorders.

[14]  Physical conditions.

[15]  Severity of Psychosocial Stressors.

[16]  Highest Level of Functioning.

(Tr. 210)  Mr. Wilhite's treatment plan included psychiatric services, medication management, and individual therapy for depression, substance abuse, anger management, and socialization. (Tr. 210-11.)  Mr. Wilhite's estimated length of treatment was one year.  (Tr. 211.)

Mr. Wilhite was next evaluated on January 1, 2010, by Psychiatrist Zinat Sobhani. (Tr. 232-34.)  Mr. Wilhite reported he was recently released from Sunrise and sent to an inpatient rehabilitation program for substance abuse for approximately 21 days.  (Id.)  Mr. Wilhite stated he had been admitted to Sunrise due to heavy drug use, agitation, and mixing his medications with drugs.  (Id.)  Mr. Wilhite listed his medications as Zyprexa, Zoloft, and Lithium. Dr. Sobhani noted Mr. Wilhite's behavioral health history, medical history, medication history, legal history, substance abuse history, and family and social history.  (Tr. 232-33.)  Dr. Sobhani also performed a mental status examination.  (Tr. 233.)  Dr. Sobhani's impression was as follows:

> 29 y/o male, with long past psychiatric history of recurrent mood problems, violent behavior, heavy drug use, serious legal problems, poor interpersonal relationship, and poor compliance with psych tx.  Has strong genetic predisposition to affect dx, no h/o childhood trauma beside parental divorce.  Has had very poor academic performance with long h/o special education, recently admitted inpatient/rehab, reported being compliant with his medx for the first time, and seems to be responding well to his regimen so far.

(Tr. 233.)  Dr. Sobhani's diagnosis was as follows:

| | | |
|---|---|---|
| Axis I – 296.80 – | Bipolar Disorder NOS | |
| Axis I – 314.01 – | Attention-Deficit/Hyperactivity Disorder Combined Type. Rule out. | |
| Axis I – 292.12 – | Substance [Amphetamine, Cannabis, Cocaine, Hallucinogen, Inhalant, Opioid, Phencyclidine | |
| Axis II – 799.9 – | Deferred. | |
| Axis III – | Denied | |
| Axis IV – | Problems related to interaction with legal system/crime | |

---

[17] A GAF score of 47 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  DSM-IV–TR at 34.

  Axis V –    [GAF] 50[18]

(Tr. 233-34.)  Dr. Sobhani's treatment plan included obtaining Mr. Wilhite's records from Sunrise, continuing him on Zyprexa, Zoloft and Lithium, and adding Trazodone.  (Tr. 234.)  Dr. Sobhani indicated that Mr. Wilhite would continue with substance abuse counseling and return in three weeks.  (Id.)

  The records indicate Mr. Wilhite saw Dr. Sobhani on February 23, 2010, March 30, 2010, April 7, 2010, and April 25, 2010.  (Tr. 155, 235, 237, 239.)

  On January 9, 2010, Therapist Jose Bose prepared a "To Whom It May Concern" letter that stated Mr. Wilhite had been receiving therapy once a week since December 3, 2010, and that he is unable to work due to his severe mental disability.  (Tr. 269.)

  **C.**  **Disability Determination Examination – Richard Fink, PhD.**

  On September 30, 2009, Mr. Wilhite was evaluated by State Agency medical consultant Richard Fink, Ph.D.  (Tr. 333-336.)  Dr. Fink took Mr. Wilhite's medical and social history and concluded as follows:

DIAGNOSIS:

  Axis I -  Bipolar disorder, most recent episode depressed.

> His ability to understand and remember detailed or complex instructions does appear to be moderately impaired.  It might be better if his depression was successfully treated.  Abilities for short simple instructions are also moderately impaired, but again, they could be better if he was appropriately treated.  Ability for sustained concentration and task persistence appear to be significantly impaired.  He may have trouble following instructions and likely is to lose interest in the task.  Abilities for social interactions do appear to be seriously impaired by his depressed mood.  Abilities to adapt to changes in the workplace, be aware of normal hazards and react appropriately are mildly impaired.  By his report drugs

---

[18] A GAF score of 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  DSM-IV–TR at 34.

still may be an issue. He claims to be clean but is at risk for relapse. Should he receive benefits it might be best to have someone else handle them for him.

(Tr. 335.)

### D. Mental Residual Functional Capacity Assessment – A. Smith[19]

On November 29, 2009, non-examining State Agency medical consultant A. Smith reviewed Mr. Wilhite's medical records dated June 1, 2009, through November 29, 2009, and determined as follows:

> Claimant retains the capacity to understand, remember, and carry out simple instructions; relate appropriately to co-workers, supervisors, and the general public on an incidental basis; and sustain sufficient attention/concentration to complete a routine workday of simple, repetitive tasks without significant interruptions from psychologically-based symptoms.

(Tr. 281.)

### E. Psychiatric Review Technique – A. Smith

On November 29, 2009, non-examining State Agency medical consultant A. Smith prepared a Psychiatric Review Technique to determine whether Mr. Wilhite's mental condition(s) met a listing to warrant automatic approval of benefits. (Tr. 283-295.) Dr. Smith found that Mr. Wilhite's mental conditions met the listings for affective disorders and substance addiction. (Id.) However, Dr. Smith determined that Mr. Wilhite only had mild functional limitations in his activities of daily living; had moderate functional limitations in maintaining social functions and concentration, persistence, or pace; and that Mr. Wilhite had had one or two episodes of decompensation. (Tr. 293.) Dr. Smith's notes were as follows:

> Records indicate a history of bipolar disorder, untreated and chronic substance abuse, amphetamine dependence. He received detox hospitalization for three days in July; at that time he presented as depressed possibly suicidal, and positive for amphetamines. The intervention proved effective as he discharged improved

---

[19] The record does not indicate A. Smith's academic degree and professional designation; *i.e.,* M.D. or Ph.D. That said, Mr. Wilhite has not challenged A. Smith's designation as an acceptable medical source in the absence of this information.

11

with instruction to continue medications.  When seen by Dr. Fink two months later he reported [he] had not filled the prescription and last used drugs a week prior to the contact.  On exam he worked slowly, seemed lethargic, and somewhat disinterested.  His performance did not reveal psychosis, suicidal ideation, or manic, however, he did appear depressed.  He managed the simple tasks but struggled with more complex items.  [Activities of daily living] information suggests competence at a simple routine; he tends to withdraw and complete tasks when instructed.  Impairments severe but do not meet or equal a listed impairment.

(Tr. 295.)

      **F.**      <u>**Case Analysis – Jill Blacharsh, M.D.**</u>

On August 4, 2010, non-examining State Agency medical consultant Jill Blacharsh, M.D., reviewed Mr. Wilhite's medical records on reconsideration.  (Tr. 186.)  She noted that Mr. Wilhite was alleging additional conditions of anxiety and depression.  (Id.)  She further noted Mr. Wilhite's two additional admissions to Sunrise in December 2009 and March 2010, but indicated he was clinically stable at each discharge.  (Id.)  Dr. Blacharsh concluded that the "additional information appears consistent w/prior PRTF/MRFC dated 11/29/09 which finds that clmt [sic] retains the capacity for unskilled work."  (Id.)

<u>**Analysis**</u>

Mr. Wilhite makes three primary arguments in support of reversing and remanding his case.  First, he argues that the ALJ must expressly state the weight given to all medical opinions and explain her reasons for accepting some of the opinions but not others.  (Doc. 16-1 at 1.)  Second, he asserts the ALJ must consider each medical opinion about a claimant's ability to work, even if the opinion came before a claimant's alleged onset date.  (Id.)  Finally, Mr. Wilhite contends the ALJ failed to consider the observations recorded by Social Security Administration employees during interviews.  (Id. at 2.)  Because the Court finds Mr. Wilhite's first argument

presents grounds for remand, the Court will limit its analysis to the first issue raised by Mr. Wilhite.

The Motion will be granted, and the case will be remanded because, in formulating the RFC assessment, the ALJ impermissibly failed to discuss the weight she assigned to any of the medical opinions. In addition, the ALJ also failed to explain her reasons for adopting certain moderate limitations while rejecting more severe limitations. It is the ALJ's duty to give consideration to all the medical opinions in the record. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). An ALJ must also discuss the weight assigned to such opinions. *Id.* (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.")). Although ALJs are not required to discuss every piece of evidence, "in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence. *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). Further, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga*, 482 F.3d at 1208 (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)).

The ALJ's failure to discuss the weight she assigned to each medical source opinion is reversible error. *Keyes-Zachary,* 695 F.3d at 1161; *see also Krauser v. Astrue*, 638 F.3d 1324,

1330 (10th Cir. 2011) (remand is required when an ALJ fails to make clear how much weight is assigned to medical opinions). Although Defendant argues that the ALJ's determination is based on substantial evidence because she discussed the various medical opinions of record in determining Mr. Wilhite's RFC, Defendant nonetheless does not address the ALJ's failure to discuss the weight she assigned to each opinion. The regulations are clear that unless a treating source's opinion is given controlling weight, an ALJ *must* discuss the *weight* given to medical opinions. 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). Here, the ALJ failed to discuss the weight she assigned to any opinion.

Furthermore, the ALJ discussed only those parts of the medical opinions that supported her finding of nondisability and failed to discuss those parts of the medical opinions that supported more severe limitations. This is also reversible error. *Haga*, 482 F.3d at 1208 (remand is required when an ALJ fails to adequately explain adoption and/or rejection of medical opinions in making RFC assessment). For example, the ALJ cites first to a July 19, 2009, medical report that states "claimant is depressed." (Tr. 23.) However, the totality of the report referenced by the ALJ details the first of three admissions by Mr. Wilhite to Sunrise due to his depression and bipolar disorder. (Tr. 305.) Mr. Wilhite's GAF score on July 19, 2009, was 31-40, indicating some impairment in reality testing or communication or major impairment in areas such as work, family, judgment, thinking, or mood. The ALJ fails to include this information in her discussion of that report.

The ALJ refers next to Dr. Fink's disability determination examination and highlights Dr. Fink's finding that Mr. Wilhite is only moderately impaired in his ability to follow short, simple instructions. (Tr. 23.) However, she fails to include Dr. Fink's finding that Mr. Wilhite's ability for sustained concentration and task persistence, as well as social interaction, are

*significantly* impaired.  (Tr. 335.)  Instead she relies without explanation on non-examining State Agency medical consultant A. Smith's finding that Mr. Wilhite has moderate functional limitations in maintaining social functions and concentration, persistence, or pace.  (Tr. 293.)

The ALJ next cites to a psychosocial assessment performed by TeamBuilders Counseling Services and highlights information that Mr. Wilhite has no difficulty with any of his activities of daily living, has some deficits in socialization skills, likes being alone, and lives with his wife and children.  (Tr. 23.)  However, she excludes from her discussion that the assessment also indicated Mr. Wilhite has a heightened mood, exaggerated optimism, decreased need for sleep without experiencing fatigue, is impulsive, exercises poor judgment, has difficulty keeping jobs, and was diagnosed with a GAF score of 47, which indicates serious impairment in social and occupational functioning.  (Tr. 206-211.)  This is uncontroverted evidence that the ALJ ignored.

In discussing Dr. Zinat Sobhani's opinion, the ALJ indicated Mr. Wilhite's GAF score of 50, but noted he was well groomed, related well, and that his mood was slightly sad and his affect was constricted.  (Tr. 24.)  Dr. Sobhani's notes, however, more fully describe Mr. Wilhite as someone with a long psychiatric history of recurrent mood problems, violent behavior, heavy drug use, serious legal problems, poor interpersonal relationship, and poor compliance with psychiatric treatment.  (Tr. 233.)  None of this was discussed and is clearly probative in determining whether Mr. Wilhite is disabled.

Finally, the ALJ points to records from Mr. Wilhite's March admission to Sunrise and summarizes that at discharge Mr. Wilhite's "appearance was appropriate and his mood was sad. His affect was congruent and his thought process was logical.  His appetite was adequate and his sleep was sufficient.  He was stable until his doctor changed his medication."  (Tr. 24.) However, the ALJ fails to discuss that this was Mr. Wilhite's *third* admission to Sunrise in less

15

than one year. The fact of Mr. Wilhite's recurrent episodes of decompensation is relevant evidence that the ALJ essentially ignored in making her determination that Mr. Wilhite is not disabled.

Thus, the ALJ's conclusion that "[c]learly, the record shows that when the claimant continues with his treatment he is able to perform work with the above restrictions" is not supported by substantial evidence. Moreover, the ALJ failed to discuss the weight she assigned to each medical source opinion. In addition, she failed to explain her reasons for accepting only portions of some of the opinions while rejecting others. This is reversible error.

The Court will not address Mr. Wilhite's remaining claims of error. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## Recommendation

For the foregoing reasons, the Court recommends that Mr. Wilhite's Motion to Reverse or Remand be **GRANTED.**

Timely objections may be made pursuant to 28 U.S.C. § 636(b)(1)(c). Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(c), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court for the District of New Mexico. A party must file any objections within the fourteen (14) days period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**KIRTAN KHALSA**
**United States Magistrate Judge**